UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,    .    Case No. 1:09-CR-00208
                             .    (EGS)
              Plaintiff,     .
                             .    Washington, D.C.
     v.                      .    November 20, 2009
                             .
NEIL FELAHY,                 .
                             .
              Defendant.     .
. . . . . . . . . . . . . .  .

PLEA HEARING
BEFORE THE HONORABLE ALAN KAY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:        Office of the U.S. Attorney
                          By:  SHERRI SCHORNSTEIN, ESQ.
                          555 Fourth Street, NW
                          Washington, DC 20530

For the Defendant:        Schertler & Onorato, LLP
                          By:  DANNY C. ONORATO, ESQ.
                               ROBERT J. SPAGNOLETTI, ESQ.
                          601 Pennsylvania Avenue, N.W.
                          North Building, 9th Floor
                          Washington, DC 20004

Transcriber:              MR. STEPHEN C. BOWLES

Proceedings recorded by electronic sound recording.
Transcript produced by transcription service.
_____

BOWLES REPORTING SERVICE
P.O. BOX 607
GALES FERRY, CONNECTICUT 06335
(860) 464-1083

1          (Proceedings commenced at 10:59 a.m.)

2               THE CLERK:  Criminal Case Number 2009-208-03.

3               The United States of America v. Neil Felahy.

4               Sherri Schornstein representing the

5     Government.

6               Danny Onorato and Robert Spagnoletti

7     representing the Defendant.

8               The Defendant is present in the courtroom.

9               This is set on the calendar for a plea

10    hearing.

11         (The Defendant is Sworn.)

12               THE CLERK:  Mr. Onorato or Mr. Spagnoletti,

13    you can bring Mr. Felahy to microphone, please.

14         (The Court and the Clerk confer.)

15               THE COURT:  Mr. Felahy, the Court understands

16    that you're here this morning and that you wish to

17    enter a plea of guilty to two counts in the Indictment.

18               Is that correct sir?

19               THE DEFENDANT:  Yes, Your Honor.

20               THE COURT:  All right.

21               Now, as you know, Mr. Felahy, this case is

22    assigned to United States District Judge Sullivan as

23    the trial judge.

24               The proceeding that will be occurring here

25    this morning is called a "plea hearing" or a "plea

1  colloquy," if you will, as required by the federal
2  criminal rules.
3          Now, Judge Sullivan has referred the plea
4  hearing down to me to conduct, as a United States
5  Magistrate Judge, so I need to have your consent for me
6  to conduct this hearing, as well as the consent of your
7  counsel and government counsel, with the clear
8  understanding that I will play no part in the sentence
9  that is imposed in this case.  Judge Sullivan is going
10  to be responsible for any sentence that is imposed.  If
11  I permit you to enter a plea of guilty at this time,
12  Judge Sullivan also will have to review my report and
13  recommendation, and accept your plea of guilty if,
14  indeed, you enter a plea of guilty in this case.
15          He will also be the person who will determine
16  what the -- advisory Sentencing Guidelines apply in
17  this case.
18          So my role is limited to making sure that you
19  fully understand the consequences of entering a plea in
20  this case, and make sure that it's a knowing and
21  voluntary act on your part, but I have no role with
22  respect to the sentence that will subsequently be
23  imposed if your plea of guilty is accepted.
24          So I need to have your consent, the consent
25  of Mr. Spagnoletti as your counsel, and also the

1    consent of the Government.

2         Do you consent that I can go forward and

3    conduct this plea hearing?

4         THE DEFENDANT:  I do.

5         THE COURT:  All right.

6         Mr. Mr. Spagnoletti?

7         MR. SPAGNOLETTI:  Yes, Your Honor.

8         THE COURT:  Ms. Schornstein?

9         MS. SCHORNSTEIN:  Yes, Your Honor.

10         THE COURT:  Very well.

11         Now, I'm going to be explaining certain of

12    your rights, Mr. Felahy, and also -- that you're going

13    to be waiving, by the way, before I permit you to enter

14    a plea of guilty, and I'm also going to be asking you

15    questions, so it's very important that you understand

16    everything I tell you with respect to your rights, and

17    also be sure that the questions I ask you are answered

18    truthfully.  If you fail to answer truthfully, the

19    Government would have the right to, in fact, bring

20    additional charges of perjury, should you fail to

21    answer any questions truthfully while you're under

22    oath.

23         So, if you don't understand any of the

24    questions, if you don't understand any of the rights

25    that I will be explaining to you, you stop and let me

know and I will either try to explain them or have your lawyer or the government lawyer explain those rights to you.

Is that understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.

I want you to state your full and correct name for the record, sir.

THE DEFENDANT:  Neil Felahy.

THE COURT:  All right.

Now, have you taken any medication, alcohol or drugs, legal or illegal drugs, within the last 24 hours?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Do you know of any -- Well, are you now under the influence of alcohol or drugs?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Do you know of any reason that you would not be able to understand the proceedings that occur here this morning?

THE DEFENDANT:  No, Your Honor.

THE COURT:  How far did you go in school, Mr. Felahy?

THE DEFENDANT:  I graduated from university.

THE COURT:  All right.

1          With a degree?

2          THE DEFENDANT:  (Unintelligible.)

3          THE COURT:  All right.

4          A undergraduate degree?

5          THE DEFENDANT:  (Unintelligible.)

6          THE COURT:  Mr. Spagnoletti or Government

7   Counsel, do either of you have any questions as to Mr.

8   Felahy's competence to enter a plea at this time?  Mr.

9   Spagnoletti?

10          MR. SPAGNOLETTI:  No, Your Honor.

11          THE COURT:  Ms. Schornstein?

12          MS. SCHORNSTEIN:  No, Your Honor.

13          THE COURT:  Very well.

14          The Court finds that Mr. Felahy is competent

15   to understand the proceedings that will be occurring

16   here this morning.

17          Now, Mr. Felahy, have you had a full and

18   ample opportunity to discuss this case with your

19   attorney, and you have two attorneys, I understand, and

20   you've discussed the case with them, and are you

21   satisfied with their representation of you?

22          THE DEFENDANT:  Yes, Your Honor.  I am.

23          THE COURT:  Both the opportunity to discuss

24   the case and your satisfaction?

25          THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  All right.

2          Now, as you recall, a few moments ago I said

3    I'm going to be explaining certain of your rights.

4          Under the Constitution and laws of the United

5    States, you're entitled to a trial by jury on the

6    charges that are contained in the Indictment, and by

7    now you know that an indictment is just a piece of

8    paper or, in this particular case, several pieces of

9    paper, setting forth the charges that the government --

10   have been brought against you, and you'd be entitled to

11   a trial by a United States District Judge, and in this

12   case it would be Judge Sullivan, and the understanding

13   is that you, with respect to this case, are going to be

14   pleading guilty to Count One and Count Two of the

15   Indictment.

16          Is that correct, Ms. Schornstein?

17          MS. SCHORNSTEIN:  Yes, Your Honor.

18          THE COURT:  All right.

19          Now, you should understand, sir, that under

20   -- that if there were a trial in this case, you would

21   be presumed to be innocent, and if you're to be found

22   guilty, the Government, through the prosecutor, Ms.

23   Schornstein, would be required to prove your guilt by

24   competent, that means admissible, evidence, and the

25   Government would have to prove that beyond a reasonable

1   doubt.

2          Now, if there were trial, witnesses for the

3   Government would have to come into court, testify in

4   your presence, and your attorney -- attorneys would be

5   able to cross-examine those witnesses, object to any

6   evidence that was offered by the government prosecutor

7   and, in addition, offer evidence on your behalf.

8          At the trial, you would have right to testify,

9   but by the same token you would have right not to

10  testify, and if it was your decision, based upon advice

11  of counsel, or your own desire not to testify, there

12  could be no inference or suggestion of guilt drawn from

13  the fact that you decided not to testify at that trial.

14         Now, if I permit you to enter a plea of guilty

15  and Judge Sullivan accepts that plea, there will be no

16  trial and he will, in effect, enter a judgment of guilt

17  against you.

18         Do you fully understand what's happening

19  there?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  All right.

22         Now, if you enter a plea of guilty, you

23  should also understand that you will be waiving your

24  right not to incriminate yourself.

25             Under the Constitution of the United States,

no one in the federal -- certainly in the federal court
system, no one has the obligation or -- to, in any way,
acknowledge that they're guilty of any criminal offense
orally or in writing, however, before I permit you to
enter a plea of guilty, I'm going to ask you, in very
simple language, if you are guilty of the offenses
charged in Count One and Two of the Indictment, and if
you say "Yes" to that question, then clearly you are
incriminating yourself, and thereby waiving your
constitutional right not to say anything that would
incriminate you.

        Do you fully understand that?

        THE DEFENDANT:  Yes, Your Honor.

        THE COURT:  All right.

        You should also understand that if Judge
Sullivan ultimately accepts your plea of guilty, you'll
waive your right to have your attorney -- attorneys
file motions on your behalf, including any motions that
would challenge the taking of any evidence, or taking
of any statement that you may have made.

        You should also understand that you will waive
your right to appeal your conviction to a higher court.

        Now, unless there are unusual circumstances or
is -- there is some other agreement with the
Government, once you enter a plea of guilty and the

1    Court accepts that plea of guilty, for all intents and

2    purposes, it's a done deal.  You can't say to Mr.

3    Spagnoletti or Mr. Oronato, today or tomorrow, or next

4    week, and say, "You know, I changed my mind.  I'd like

5    to withdraw my plea of guilty," or seek an appeal to

6    the court of appeals upstairs, to withdraw your plea of

7    guilty.  Once it's entered, unless there are special

8    circumstances that could give rise to a right to

9    withdraw it, it's all over.

10                You understand that?

11                THE DEFENDANT:  Yes, Your Honor.

12                THE COURT:  And you should also understand

13   that -- Well, having discussed those rights with you,

14   do you still want to enter a plea of guilty at this

15   time?

16                THE DEFENDANT:  Yes, Your Honor.

17                THE COURT:  All right.

18                Now, the Court has before it, Mr. Felahy,

19   consent to proceed before me, a United States

20   Magistrate Judge, for this, what we call a Rule 11

21   colloquy or plea hearing, and a waiver of your right to

22   be tried by a jury.

23                Now, this appears to have your signature on

24   it.

25                Do you recall signing your signature on this

1   form?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  I will accept that waiver.

4              Now, I know because I asked at the time you

5   appeared before this Court for your arraignment, that

6   your attorneys had received a copy of the Indictment.

7              Have you gone over that Indictment with your

8   attorneys?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  And I'm going to not go into the

11  exhaustive detail of the charges, but as you know by

12  now, Count One of the Indictment charges you with a

13  conspiracy, along with other persons who are named in

14  the Indictment, of violating the law, in that you were

15  -- trafficked in counterfeit goods and services.

16             And Count Two is that trafficking in

17  counterfeit goods count of the Indictment.

18             Now, do you, and you went over those two

19  counts with your attorneys, fully understand the

20  charges that were brought against you?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  So you carefully went over those,

23  if you had any questions, Mr. Spagnoletti or Mr.

24  Oronato explained to you what they meant?

25             THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  All right.

2          Now, I'm assuming you discussed with your

3     attorneys, what penalties -- what the statutory

4     penalties -- what the statute, in effect, provides, the

5     maximum penalty that the statute provides for someone

6     who is found guilty of, be it by way of a plea or be it

7     by way of a trial and the verdict by a jury, to those

8     two counts.

9          You went over that with your attorneys?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Tell me, what is your

12    understanding of the maximum penalty that could be

13    imposed here?

14         Ms. Schornstein?

15         MS. SCHORNSTEIN:  Your Honor, I'm so sorry.

16         THE COURT:  Yes.

17         MS. SCHORNSTEIN:  I just noticed a typo in

18    the Plea Agreement.  It references a "Section 317"

19    conspiracy.  That should be a "371 conspiracy."

20         Could we just do a (unintelligible) change

21    and have everyone initial it?

22         THE COURT:  As soon as I find the original, I

23    can give it to you.

24         MS. SCHORNSTEIN:  It's on the first page.

25         THE COURT:  No, I understand that.  Just

1   (unintelligible) here with all these pages.

2            MS. SCHORNSTEIN:  Thank you, Your Honor.

3            THE COURT:  All right.

4        (Pause.)

5            THE COURT:  Thank you.  All right.

6            The question for you, Mr. Felahy, is what is

7   your understanding of the maximum penalty that the

8   statute provides for Count One and Two.

9            Let's start off with Count One of the

10  Indictment, the conspiracy count, which is now changed

11  in the Plea Agreement, to be Section 371 of 18 United

12  States Code.

13           What's the punishment that flows from that

14  under the -- by statute?

15           THE DEFENDANT:  Up to five years

16  incarcerated.

17           THE COURT:  All right.

18           What else?

19           THE DEFENDANT:  A fine of $250,000 or twice

20  the pecuniary gain or loss pursuant to 18 U.S.C. 357

21  (unintelligible).

22           THE COURT:  All right.

23           And you understand what that means?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  All right.

1           And also provides that if the Court imposes a

2    period of incarceration or not, that a period of

3    supervised release could be imposed by the Court, and

4    also, Judge Sullivan could order restitution and an

5    obligation to pay any applicable interest, or

6    penalties, or fines, or restitution that is not timely

7    made.

8           Now, with respect to Count Two of the

9    Indictment, sir, do you have -- have you discussed that

10   with your lawyers and the you know what the maximum

11   statutory penalty is for Count Two, which charges you

12   with trafficking in counterfeit goods or services?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  And what is that penalty, sir,

15   your understanding?

16           THE DEFENDANT:  Ten years incarceration and a

17   fine of $5 million, or a fine of twice the pecuniary

18   gain or loss, pursuant to 18 U.S.C. 3571.

19           THE COURT:  All right.

20           And as with the other count, the Trial Court,

21   Judge Sullivan, has the right to impose a period of

22   supervised release up to a maximum of a three-year

23   term, and again order restitution or forfeiture on the

24   case.

25           Now, has anyone promised you what sentence

1    will be imposed by Judge Sullivan in this case?

2              THE DEFENDANT:  No, Your Honor.

3              THE COURT:  Now, as I touched on briefly

4    initially, the Sentencing Guidelines, back in 1984 a

5    law was passed which, in effect, created a United

6    States Sentencing Commission, and that commission has,

7    over the years since 1984, issued guidelines to federal

8    judges on what they should -- how they should follow

9    and determine a sentence that's applied in a federal

10   court, and while these Sentencing Guidelines have

11   subsequently been found not to be mandatory, they are

12   still in effect, in the sense that they are advisory

13   guidelines which, by and large, the federal judges

14   follow.

15             Now, have you discussed with your two

16   attorneys, those advisory -- which are now advisory

17   guidelines, their recommendation, or the commission's

18   recommendation, have you discussed that with your

19   attorneys, and how those guidelines might affect or

20   impact your sentence in this case?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  All right.

23             You should understand, sir, that the Court,

24   e.e. Judge Sullivan, will not be able to determine what

25   the guideline sentence or the recommended guideline

1   sentence for your case will be until after a

2   presentence report has been prepared by the probation

3   office of this court, and you, your attorneys, and the

4   Government will have an opportunity to read that

5   presentence report and question any facts that may be

6   contained in that report.

7            In other words, if you disagree, or your

8   attorney disagrees with any of the facts, or the

9   Government disagrees, they would have a right to

10  question any of those facts with the presentence report

11  writer, and see whether or not that could be changed to

12  come into conformance with you -- which -- with the

13  facts, as you understand them or the Government

14  understands them.

15           You should also understand that after it's

16  been determined by Judge Sullivan what the guideline

17  range is for your sentence, he has the authority, under

18  some circumstances, to impose a sentence that's more

19  severe or less severe than -- less severe than the

20  recommended sentence of the guidelines.

21           You should also understand that under some

22  circumstances you, through your attorney, or the

23  Government, may have the right to appeal to the

24  appellate court, any sentence that Judge Sullivan

25  imposes.

1          Now, you recall I said to you once you've

2     entered a plea of guilty, unless they're very, very

3     special circumstances, you can't change your mind.

4          You remember I went over that with you?

5          THE DEFENDANT:  (No audible response.)

6          THE COURT:  This -- Here I'm making a

7     distinction and saying that under some circumstances

8     you can appeal the sentence that Judge Sullivan imposes

9     if, for some reason, your attorney feels that that

10    sentence was not within the recommendation of the

11    guidelines or the appropriate -- appropriate under the

12    sentencing guideline -- guidelines, and that he may not

13    have fully complied with the Sentencing Guidelines.

14         So, you understand what I'm saying there, and

15    the difference between the two, the appellate --

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Good.

18         Now, you should also understand that under

19    the federal criminal justice system, parole has been

20    abolished so that if the judge were to impose a

21    sentence of imprisonment, you would not be released on

22    parole, and also under the -- there's a statute that

23    provides for special assessment -- Is there a special

24    assessment here, Ms. Schornstein?

25         I don't -- I didn't notice any --

1    MS. SCHORNSTEIN:  Well, Your Honor, I think

2    perhaps it's not listed, but there is a $100 special

3    assessment.

4         THE COURT:  I think so.  I think that's --

5    That's a mandatory, non-discretionary special

6    assessment, Mr. Felahy, that Judge Sullivan will be

7    obliged to impose at the time of the sentencing.

8         Now, the Court obviously had -- since there's

9    now a correction, knows that you have entered into a

10   Plea Agreement with the Government.

11        Now, when I say it's entered into with the

12   Government, that means it's an agreement, a contract

13   that you and your attorney have entered into with the

14   Government indicating, for instance, generally, what

15   terms you have arranged with them.

16        Also, an estimate, if you will, an analysis of

17   the guidelines, and how they apply to your case.  It's

18   important that you understand that Judge Sullivan -- or

19   the Court has not entered into an agreement with the

20   Government or with you.  This is an agreement between

21   you and the Government, so that Judge Sullivan is not

22   bound by anything that is contained in this Plea

23   Agreement, but by the same token I'm not suggesting

24   that he will not go along with the contents of this

25   Plea Agreement, but he's not bound by it.

1           You understand that?

2           THE DEFENDANT:  Yes, Your Honor.

3           THE COURT:  So I'm going to now ask Ms.

4  Schornstein to give a brief synopsis of the terms of

5  that agreement, and I want you to listen very

6  carefully, because at the end of her presentation I'm

7  going to ask if you -- if that's your understanding of

8  what's contained in the Plea Agreement.

9           Ms. Schornstein?

10           MS. SCHORNSTEIN:  Thank you, Your Honor.

11           As the Court has already noted, the Defendant

12  has agreed to plead guilty to Counts One and Two of the

13  Indictment, which charge conspiracy for violation of 18

14  U.S.C., Section 371, and trafficking in counterfeit

15  goods or services in violation of Title 18, Section

16  2320.

17           In exchange for the Plea Agreement, the

18  Government has agreed that at the time of Mr. Felahy's

19  sentencing, it will move to dismiss charges in the

20  Indictment against Marwah Felahy, provided that she has

21  provided the cooperation required of her, which is

22  independent of this agreement with Mr. Felahy.

23           There is also an specific exception to this

24  Plea Agreement that does not bar prosecution of Mr.

25  Felahy in relation to crimes of violence, nor does it

bar prosecution (unintelligible) injuries or death of any persons proven to be caused by integrated circuits bearing counterfeit marks, sold or distributed in connection with this case.

Mr. Felahy agreed to a Statement of Offense that has been submitted to the Court, which he has signed. It's a fairly lengthy, 23-page document, which more or less paraphrases Counts One and Two of the Indictment, although there are a few additions to it.

There is also a Sentencing Guidelines stipulation contained in this agreement.

Mr. Felahy agrees that under the Sentencing Guidelines, the Base Offense Level is 8, that there would be a ten-level increase based on specific offense characteristics for being an arranger, more than 120,000 less than 200,000, and that pertains to the infringement value of counterfeit goods relevant to this case at the time of entering into the -- entering the Plea Agreement with Mr. Felahy.

There's also a two-level increase for offense involving the manufacture or importation of infringing items, and a two-level increase for offense involving a conscious or reckless risk of bodily injury, bringing the calculation to Level 22.

Mr. Felahy and the Government have reserved

the right to argue the application of an aggravating

role increase, or a mitigating role increase, which

could affect the final computation.

     The Government agreed that a two-level

reduction for acceptance of responsibility would be

appropriate here, and an additional one-level reduction

for timely notification to (unintelligible) his intent

to plead guilty, bringing his adjusted offense level to

Number 19.

     It's the Government's information that Mr.

Felahy has no criminal history, so his Criminal

Category is I.

     Under the Sentencing Guidelines there is a

projected stipulated range of 30 to 37 months at a

Level 19, and a fine at a Level 19 is somewhere between

6 and $60,000.

     The Government did not waive its right to seek

(unintelligible) acceptance of responsibility if Mr.

Felahy withdraws his plea or engages in some conduct

that would breach this agreement.

     Mr. Felahy has also agreed to cooperate with

the Government in this or criminal matters

(unintelligible) that he was to provide truthful,

complete and accurate information; he must answer all

questions.  He agrees to be interviewed.  He agrees not

1    to try to protect others or to falsely implicate other

2    people, and that he will comply with reasonable

3    requests from the Federal Government for specific

4    assistance and, if required, will testify at grand

5    jury, at trial, or any other matter arising from its

6    investigations.

7              In exchange, the Government has agreed that

8    at the time of his sentencing it will advise Judge

9    Sullivan and the probation department of the full

10   nature, extent, and the value of the cooperation that

11   he has provided, and that I, as the prosecutor, will go

12   to the U.S. Attorney's Office Departure Committee and

13   also apprise them of the full nature, value and extent

14   of his cooperation and, if appropriate, move for a

15   downward departure from the Sentencing Guidelines,

16   which would reduce his guideline range, and thereby

17   reduce his potential sentence under the guidelines.

18             Under this agreement he receives the benefit

19   of the protections of U.S. Sentencing Guideline Section

20   1B1.8, which provides that self-incriminating

21   information provided by him pursuant to this agreement,

22   will not be used against him except as otherwise

23   provided in this agreement.

24             He -- The agreement indicates that the Court

25   is not bound by the Plea Agreement.  The Court is also

1   not bound by the (unintelligible) Sentencing

2   Guidelines.

3           Mr. Felahy agrees to make restitution in the

4   amount of $143,835.50.

5           On page 7 of the agreement it specifies the

6   various trademark holders and the amounts for which

7   restitution is to be made.

8           The Government has also agreed that after Mr.

9   Felahy enters his Plea Agreement, we will not seek a

10  change in his conditions of release between now and his

11  sentencing, unless he engages in some criminal conduct,

12  or we obtain other information that would be relevant

13  to this agreement, which we do not have in our

14  possession at this time.

15          If Mr. Felahy breaches the agreement, a number

16  of things can occur:

17          The Government is free from its obligations.

18          He will not have a right to withdraw his

19  plea.

20          He will be the subject, fully, of prosecution

21  for other crimes, including perjury and obstruction of

22  justice, and the Government will be able to use,

23  directly or indirectly, any type of (unintelligible)

24  statements or information he has provided.

25          Mr. Felahy also agrees to waive the statute of

1   limitations, and if something should happen and this

2   agreement no longer be in effect, the Government would

3   be free to institute anything not time barred.

4          He agrees to waive his right to require DNA

5   testing although, quite frankly, I don't know if that

6   really applies to this case.

7          And that basically is the complete agreement.

8   This is everything we've agreed to (unintelligible)

9   modification or changes, the parties will enter into

10  some other document that will be signed and

11  acknowledged by everyone.

12         And the agreement is signed on behalf of the

13  United States Attorney (unintelligible) and Mr. Felahy

14  and both of his attorneys, Mr. Spagnoletti and Mr.

15  Onorato.

16         THE COURT:  Thank you, Ms. Schornstein.

17         Mr. Felahy, you've heard a complete, albeit

18  synopsis, of the terms of the agreement.

19         Now, did you have an opportunity to speak with

20  both of your attorneys and go over each and every one

21  of the provisions of that agreement?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  And did you -- were they able to

24  explain, for instance, any questions that you may have

25  had with respect to each and every one of the terms of

that agreement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.

And as far as you're concerned, you understood everything that was contained in that agreement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And you agree that the synopsis presented by the government prosecutor was an accurate recitation of what was contained in that agreement, or is contained in that agreement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Very well.

Now, on page -- Well, and it's your agreement, is it, sir, that as stated by Ms. Schornstein, that the restitution amount that the Court is being asked to accept as a -- an appropriate amount of restitution, is $143,835.50?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, on page 10 of the agreement, Mr. Felahy, there's a paragraph, as you can note -- connote, a defendant's acceptance, in which it indicates that you've read the agreement, discussed it with both Mr. Spagnoletti and Mr. Onorato, that you understand the agreement, agree to it without any

1    reservation whatsoever, and it's done voluntarily and

2    of your own free will, and that you intend to be

3    legally bound by it.

4           Is that an accurate statement?

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  And equally important, that no

7    one has threatened you in any way, or forced you to

8    enter into this agreement.

9           THE DEFENDANT:  No, Your Honor.

10          THE COURT:  And there have been no promises

11   made to you, outside of this agreement, that have

12   influenced, in any way, or forced you to enter into

13   this Plea Agreement and enter a plea of guilty?

14          THE DEFENDANT:  No, Your Honor.

15          THE COURT:  All right.

16          This appears to have your signature on page

17   10, with a date of November the 16th.

18          Do you recall signing this agreement at that

19   time?

20          THE DEFENDANT:  (No audible response.)

21          THE COURT:  Okay.

22          Now, I'm going to ask Ms. Schornstein to give

23   a brief, and I sort of put that capital letters since

24   the Government's statement of the offense is extensive,

25   so I'm going to ask Ms. Schornstein to give a brief

1    summary of that Statement of Offense, and again, I'm

2    going to ask you to listen very carefully to make sure

3    the what Ms. Schornstein says is, in fact, agreed to by

4    you.

5              Ms. Schornstein?

6              MS. SCHORNSTEIN:   Thank you, Your Honor.

7              This Statement of Offense filed in this case

8    is a 23-page document which has been reviewed by

9    counsel and Mr. Felahy, and has been signed by

10   (unintelligible) Mr. Felahy on page 23.

11             There are a number of introductory terms

12   defined.

13             The Statement of Offense explains what an

14   integrated circuit is.

15             It explains what consequences can occur if it

16   fails.

17             It explains that there are various grades of

18   integrated circuits: commercial, industrial and

19   military; and that with regard to the military, in

20   particular, it specifies that the device has been

21   manufactured to withstand extreme temperature ranges of

22   (unintelligible), that legitimate manufacturers subject

23   those parts to specialized testing, and it is sold to

24   the U.S. military at a higher price than commercial or

25   industrial rates because of the special manufacturing

1  testing done.

2         The agreement then goes on to explain what

3  trademark is and what the value of a trademark is, and

4  that a trademark serves to do a number of things,

5  including avoiding product confusion by allowing

6  consumers to have confidence that two products for sale

7  bearing identical trademarks were manufactured by the

8  same company and are of the same quality, and that when

9  a counterfeit trademark is used in the trafficking of

10  goods and the mark is identical or substantially

11  distinguishable from the mark register, or the

12  principal register of the U.S. Patent and Trademark

13  Office.  Such a counterfeit mark is likely to cause

14  confusion, mistake (unintelligible) with consumers.

15         The agreement explains what the CAGE code is,

16  that's commercial and government (unintelligible) code

17  (unintelligible) the military.

18         It also explains (unintelligible) source

19  acceptance, and that the Department of Defense would

20  require a contractor to provide something called a

21  "Certificate of Conformance," which is a written

22  document completed by the contractor, and it certifies,

23  among other things, that the parts being provided

24  conform to the contract requirements.

25         There -- The three individuals that are

1   referenced in this agreement are the three defendants

2   named in the Indictment, Mustafa Abdul Aljaff, Marwah

3   Felahy and Neil Felahy, and the allegations in this

4   case, and what's acknowledged in this agreement, is

5   that these people and others, known and unknown, have

6   engaged in interstate trafficking of counterfeit goods;

7   that is, integrated counterfeit circuits

8   (unintelligible).

9           First, they acquired counterfeit integrated

10  circuits from sources of supply in China, import them

11  into the United States, and sold them to the public via

12  the Internet.

13          Second, they obtained trademark

14  (unintelligible) integrated circuits, then stripped

15  (phonetic), sanded or ground off the original markings,

16  and caused the devices to be remarked with that or

17  another trademark, and other markings, thereby

18  fraudulently indicating, among other things, that the

19  devices were of a certain brand, or they were higher

20  quality or were of certain grade, including military

21  grade.

22          Third, the Defendants harvested dies from

23  integrated circuits and caused them to be repackaged to

24  appear new, including trademarks and other markings

25  indicating that the devices were of a certain brand,

1    higher quality, or of a certain grade.

2           And there's a number of companies that are

3    listed.  I won't go into detail, but the Statement of

4    Offense indicates who the corporate officers of these

5    were, when they were (unintelligible) business

6    addresses were, and those entities include Red Hat

7    Distributors, Inc., also known as R.H. Distributors and

8    Red Hot Distributors; Force-One Electronics, Inc.; MVP

9    Micro, Inc.; Labra, Inc., also known as Becker

10   Components, Inc.; and Pentagon Components, Inc.

11          The main addresses -- The main address for MVP

12   was Suites 110 and 115 and 160 in Irvine, California

13   17322 Von Karman, and this is the address that was used

14   for the importation, manufacture, advertisement, sale

15   and distribution of integrated circuits bearing

16   counterfeit marks.

17          The Defendants also operated websites in

18   conjunction with this conspiracy.  Those were

19   www.mvpmicro.com, labrainc.com, rhdistributors.com,

20   pentagoncomponents.com.

21          The conspiracy is alleged to have occurred

22   from about September 26th of 2007, at least until about

23   May 18th, 2009, as to Mustafa Abdul Aljaff, Marwah

24   Felahy and Neil Felahy, and continuing as to Mustafa

25   Abdul Aljaff, and others known and unknown, until

1    October 8, 2009 (unintelligible) that that was the date

2    the Government executed the search warrants.

3            Mr. Felahy was employed by MVP Micro as the

4    Operations Manager from approximately February 23, 2007

5    until May 18th 2009, and the Defendant has agreed that

6    these individuals conspired with other persons, known

7    and unknown, to do two things:

8            One, is to commit offenses against the United

9    States; that is, trafficking in counterfeit goods or

10   services, and to commit mail fraud, and also to defraud

11   the United States of America (unintelligible).  That is

12   the conduct (unintelligible) by selling to the U.S.

13   Navy, integrated circuits bearing counterfeit marks

14   which were, in fact, not what they were represented to

15   be.

16           The goal of the conspiracy was to enrich

17   themselves by selling these goods, and also the

18   (unintelligible) falsely representing they were

19   military grade.

20           There is a detailed manner and means laid out

21   in the statement of offense, which involves creating

22   this counterfeiting operation at the Von Karman

23   address, advertising (unintelligible) integrated

24   circuits on the various websites, acquiring from China,

25   which were actually counterfeit, importing them into

1    the United States through various ports of entry,

2    having them delivered to the Von Karman address, also

3    acquiring industrial machinery to be used in applying

4    counterfeit marks and so forth.

5          It goes on to explain that acetone can be used

6    to remove markings, and that markings can be grinded or

7    sanded off, and that the dies inside the components to

8    be sent for actual remarking.

9          The Defendants are also alleged to have

10   created false Certificates of Conformance indicating

11   that the goods were what they were represented to be

12   per the purchase order (unintelligible) the case.

13         Defendants also acquired CAGE codes to do

14   business with the Department of Defense, and so forth.

15         There were also a number of overt acts that

16   are alleged, Your Honor, and these occurred in the

17   District of Columbia and elsewhere.  I won't go through

18   them all in detail, I will just indicate the type of

19   overt act.

20         One type was the operation and formation of

21   the businesses, which were all the companies that I

22   previously referenced.

23         Another was the operation of the websites that

24   I already mentioned, the counterfeiting operation and

25   the operation occurring on the Von Karman location.

1          Another type of overt act involved the

2     importation of integrated circuits bearing counterfeit

3     marks, and there were 22 of those importations that

4     were seized by Customs Border Protection, all of which

5     originated from China, and one originated from Hong

6     Kong.

7          There was the sale of integrated circuits

8     bearing counterfeit marks to a midwestern manufacturer,

9     and the sale of counterfeit integrated circuits to the

10    United States military, which were (unintelligible)

11    purchases that were (unintelligible) in this case.

12          I would like to read the elements of

13    trafficking offense into the record.

14          On or about March 12, 2009, in the District of

15    Columbia and elsewhere, Neil Felahy, Mustafa Abdul

16    Aljaff and others intentionally trafficked and

17    attempted to traffic in goods; that is, integrated

18    circuits marked Part Number OPA627AU, knowingly using

19    on and in connection with the goods, the mark; that is,

20    a spurious mark identical to and substantially

21    indistinguishable from a registered trademark of Texas

22    Instruments Corporation, Registration Number 3445038,

23    which includes the word mark "BB," a mark that has been

24    in use since 1959, is registered for those goods on the

25    principal register of the United States Patent and

1   Trademark Office, the use of which trademark is likely
2   to confuse and -- likely to cause confusion and
3   mistake, and to deceive.
4          That is the agreement, Your Honor.
5          THE COURT:  Thank you, Ms. Schornstein.
6          Well, Mr. Felahy -- Well, let me ask you, Mr.
7   Spagnoletti, when did the Government provide you with a
8   copy of this statement of the offense?
9          MR. SPAGNOLETTI:  During the past week, Your
10  Honor, we have been back-and-forth on the Statement of
11  Offense.
12         THE COURT:  I see.
13         MR. SPAGNOLETTI:  This --
14         THE COURT:  When you say -- So you've had
15  this -- a copy or the original copy that may have been
16  modified what, earlier this week --
17         MR. SPAGNOLETTI:  Yes.
18         THE COURT:  -- or last week.  So --
19         MR. SPAGNOLETTI:  This week --
20         THE COURT:  This week.
21         MR. SPAGNOLETTI:  -- (unintelligible) some
22  modification --
23         THE COURT:  So you've had four or so days to
24  go over this, both you and Mr. Onorato and Mr. Felahy?
25         MR. SPAGNOLETTI:  Yes, Your Honor.

1    THE COURT:  Okay.

2         Now, Mr. Felahy, this is a somewhat

3    exhaustive recitation of the charges that have been

4    brought by the Government, contained in those Counts

5    One and Count Two, and Ms. Schornstein, the government

6    prosecutor, went over the contents in some detail.

7         Now, do you agree with -- as -- agree in the

8    sense of this -- that the events happened as she

9    related in her statement to -- on the record.

10        THE DEFENDANT:  Yes, Your Honor, I do, but

11   there are just a few things that, you know, that I

12   don't agree with in regards to --

13        THE COURT:  Well, now's the time for you to

14   state what they are.

15        THE DEFENDANT:  In regards to my wife, Marwah

16   Felahy, I maintain that she did not know about any of

17   the allegations in the paperwork, and maintain her

18   innocence.

19        THE COURT:  All right.

20        THE DEFENDANT:  That's all.

21        THE COURT:  That's it?  All right.

22        However, you did know?

23        THE DEFENDANT:  Yes, Your Honor.

24        THE COURT:  Now, you and your attorney's went

25   over the Statement of Offense so you had a full

1    opportunity and you have had a number of days in which

2    to read this and digest it and understand everything

3    that's contained in it?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  And everything that's contained

6    here, as it applies to you, as opposed to your wife, is

7    accurate?

8              THE DEFENDANT:  Yes, Your Honor, it is.

9              THE COURT:  And at the end, on page 23 of

10   this agreement, it states that you declare under

11   penalty of perjury, that the foregoing, foregoing being

12   the Statement of Offense, is a true and accurate

13   statement of the facts, and accurately sets forth, in

14   your judgment and belief and representation, sets forth

15   a portion of your conduct in connection with this case.

16             Is that correct?

17             THE DEFENDANT:  (No audible response.)

18             THE COURT:  Yes.

19             And it appears, again, to have your signature

20   at the bottom of this.

21             You recall signing this?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  And you signed this when?

24             THE DEFENDANT:  Today.  Earlier.

25             THE COURT:  Today?  All right.  Because

1    there's no date as to when this was executed.

2         So I will sort of ask you again, and I've

3    asked you earlier on this, you're both essentially in

4    agreement with the summary and the statement of

5    offense, and in total agreement, except for any

6    implications in the agreement -- in the offense

7    statement, that your wife was culpable in this case.

8         Now, has anyone -- So you're pleading guilty

9    in this case because you are guilty; is that correct?

10        THE DEFENDANT:  Yes, Your Honor.

11        THE COURT:  Or you wish to enter a plea of

12   guilty for that reason?

13        THE DEFENDANT:  (No audible response.)

14        THE COURT:  All right.

15        Ms. Kay, you have a copy of the Indictment.

16   Count One, and Count Two is indicated by the yellow

17   (unintelligible).

18        THE CLERK:  Thank you, Your Honor.

19        Neil Felahy, in Criminal Case Number 2009-

20   208, in which you are charged -- how many total counts

21   are there in this Indictment, --

22        MS. SCHORNSTEIN:  There are eleven.

23        THE CLERK:  -- in which you are charged in an

24   eleven-count Indictment, how you wish to plead to Count

25   One of the Indictment, conspiracy, aiding and abetting,

1 causing an act to be done in violation of Title 18 of

2 the United States Code, Section 371 and 2; and also to

3 Count Two of the Indictment, trafficking in counterfeit

4 goods or services, aiding and abetting, causing an act

5 to be done in violation of Title 18 of the United

6 States Code, Sections 2320(a) and 2?

7       THE DEFENDANT:  Guilty.

8       THE COURT:  It is the finding of the Court

9 that the Defendant, Mr. Neil Felahy, is fully competent

10 and capable of entering an informed plea, that his plea

11 of guilty is a knowing and voluntary plea supported by

12 an independent basis in fact, containing each of the

13 elements of the offenses charged in Count One and Count

14 Two of the Indictment.

15       Therefore, it's going to be the recommendation

16 of this Court that Judge Sullivan, the Trial Court in

17 this case, accept his plea of guilty, and that he be

18 adjudged guilty of that offense.

19       Now, the Government is not objecting to your

20 remaining on bond.  The bond has been set, Mr. Felahy,

21 so again, I will caution you to be sure that you comply

22 with the conditions of that bond, and not get involved

23 in any other criminal activity because that could

24 jeopardize your bond status.

25       The Court has before it also, a booking -- a

1   so-called "routine booking order" which the Court has

2   signed, and I assume, from what I see here, that you

3   will, at a convenient -- mutually convenient date or

4   time, with both the government representatives, i.e.

5   the agents involved, and you, will go through the

6   routine booking of this.

7          I would also commend to you, Mr. Spagnoletti,

8   that you perhaps visit, while you're here with Mr.

9   Felahy, the probation office, to set up an appointment

10  with a presentence report writer.

11         Ms. Schornstein?

12         MS. SCHORNSTEIN:  Your Honor, if I could,

13  because Mr. Felahy has been cooperating with the

14  Government, we would ask that the presentence report

15  not go forward at this time.  We would ask, instead,

16  for a controlled status date or controlled sentencing

17  date for early February, and if by some chance the

18  matters are resolved, we can always request that Judge

19  Sullivan order the preparation --

20         THE COURT:  All right.

21         And this will be a status hearing before

22  Judge Sullivan?

23         MS. SCHORNSTEIN:  Yes.

24         THE COURT:  Very well.

25         MS. SCHORNSTEIN:  Preferably early February.

1          THE COURT:  All right.

2          We'll need to contact his courtroom deputy to

3   pick a date on that, and I will -- So you will hold

4   off, obviously, under those circumstances, Mr.

5   Spagnoletti.  It won't be necessary to take him to the

6   pretrial or probation office for any presentence report

7   at this time.

8        (Pause.)

9          MR. SPAGNOLETTI:  Your Honor, we have a date

10  set before Judge Sullivan in January, as a status date

11  in the original matter, and if it's convenient, can we

12  use that same date, the Government (unintelligible)

13  kind of early, but we'll at least all be there.

14          THE COURT:  Well, --

15          MS. SCHORNSTEIN:  That's fine, Your Honor.

16  We can ask the Court for more time --

17          THE COURT:  Or you can contact chambers, but

18  if you already have a date set, what is that date?  I

19  don't recall.

20          MR. SPAGNOLETTI:  January 12th, Your Honor.

21          MS. SCHORNSTEIN:   Yes.

22          THE COURT:  All right.

23          So why don't we just leave the status hearing

24  for January 12th.

25          What -- Do you recall the time, Mr. --

1          MR. SPAGNOLETTI:   (No audible response.)

2          THE COURT:   Right.

3          MS. SCHORNSTEIN:   Thank you.

4          THE COURT:  All right.  Before EGS.  Okay.

5     All right.

6          Counsel, there's nothing further.  You're

7     excused, and if -- make sure, Mr. Felahy, that you

8     comply with all the conditions, and obviously you're

9     going to be meeting with the agents and, I assume,

10    meeting with other -- whatever government agents that

11    you're gonna be chatting with in the future.

12          All right.  Thank you, Counsel.

13        (Proceedings concluded at 11:53 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I certify that the foregoing is a correct transcript

from the electronic sound recording of the proceedings

in the above-entitled matter.


/s/_____          December 21, 2009

STEPHEN C. BOWLES